```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X
UNIQUE WOODWORKING, INC.,                 :
                                                      07 Civ. 1951 (WCC)
                  Petitioner,             :
                                                         ECF CASE
For an Order Pursuant to Article 75 of    :
the CPLR Staying Arbitration of a
Certain Controversy                       :

       - against -                        :         OPINION
                                                    AND ORDER
THE NEW YORK CITY DISTRICT COUNCIL OF     :
CARPENTERS' PENSION FUND, et al.,
                                          :
                  Respondents.
                                          :
- - - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

WASSERMAN GRUBIN & ROGERS LLP
**Attorneys for Petitioner**
1700 Broadway, 42nd Floor
New York, New York 10019

MICHAEL T. ROGERS, ESQ.
SUZAN ARDEN, ESQ.

    Of Counsel

O'DWYER & BERNSTIEN, LLP
**Attorneys for Respondents**
52 Duane Street, 5th Floor
New York, New York 10007

NICHOLAS S. HANLON, ESQ.

    Of Counsel

**Copies E-Mailed to Counsel of Record**

**CONNER, Senior D.J.:**

Petitioner Unique Woodworking, Inc. ("Unique") commenced the present action against respondents the New York City District Council of Carpenters' Pension Fund, New York City District Council of Carpenters' Welfare Fund, New York City District Council of Carpenters' Vacation Fund, New York City District Council of Carpenters' Annuity Fund, New York City District Council of Carpenters' Apprenticeship Fund, New York City District Council of Carpenters' Charity Fund, New York City and Vicinity Carpenters' Labor-Management Corporation (the "Funds"), and Michael J. Forde and Paul O'Brien (the "Trustees"), seeking a Temporary Restraining Order and an order permanently enjoining the arbitration sought by the Funds and Trustees. Respondents oppose petitioner's motion and move to compel arbitration. We granted a Temporary Restraining Order on March 30, 2007 and now consider petitioner's request for permanent injunction. For the reasons discussed below, petitioner's motion to enjoin the arbitration is denied, and respondents' motion to compel arbitration is granted.

## BACKGROUND

Unique is a small woodworking business in Mount Vernon, Westchester County employing both non-union and union workers. (Pet'r Mem. Supp. Order to Show Cause Staying Arbitration at 3.) Because it employs union members to perform work in New York City and on Long Island among other places, Unique is a party to an Independent Building Construction Agreement (the "Agreement"), dated July 1, 2001 to June 30, 2006, with the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "Union"). (*Id.* at 3;

1

Gordon Aff., Ex. A.) The Funds are jointly administered Taft-Hartley Trusts established pursuant to Trust Agreements which are incorporated by reference into the collective bargaining agreements ("CBA") between the Union and employers, such as the Agreement with Unique. (Resp'ts Mem. Resp. Mot. Stay Arbitration at 2-3.)

The Agreement contains the following relevant provisions:

Article I
Objectives

[T]o insure the peaceable adjustment and settlement of any and all grievances, disputes or differences that may arise between the parties . . . .

. . . .

Article VIII
Geographical Jurisdiction

This Agreement shall cover work performed by Carpenter employees within the territorial jurisdiction of the District Council of New York City and Vicinity, which is as follows:
All of the five (5) Boroughs of the City of New York, all of the Islands in and all the waters of the adjacent Harbors, Rivers and Bays, and that portion of Long Island . . . .

. . . .

Article XII
Grievance Procedure

Section 1. All complaints, disputes and differences concerning the application, interpretation, effect, purpose or breach of any term or condition of this Agreement, or in the event there shall exist any claim, demand, dispute or controversy between the parties hereto, excluding the merits of jurisdictional dispute, i.e., a dispute with another trade over the assignment of work, the parties hereto shall first attempt to settle and adjust such dispute, claim, demand or controversy by negotiation.
Section 2. Any grievance not resolved shall be submitted to arbitration . . . . It is the intent of the parties hereto that all disputes between them, both within and outside of the Agreement, shall be submitted to arbitration and that no defense to prevent the holding of the arbitration shall be permitted. . . .

. . . .

2

> Article XV
> Fringe Benefit Funds
>
> Section 1. Every Employer covered by this Agreement shall make contributions for each hour worked of all employees covered by this Agreement and employed by said Employer within the territory of this Agreement in the amounts hereinafter specified . . . .
>
> Each signatory Employer shall make available to the Trustees of the various Fringe Benefit Trust Funds, or their designated auditing representative, all pertinent books and records . . . required for an audit, to enable a said auditor to ascertain and to verify, independently, that the proper contributions hereunder have been paid. . . .
>
> . . . .
>
> Section 7. Should any dispute or disagreement arise between the parties hereto, or between the Union and any Employer - member signatory hereto, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder by filing a notice of intent to arbitrate in writing with said impartial arbitrator, and serving a copy of said notice on the Employer, or the Union, as the case may be. Unless a waiver is mutually agreed to in writing by the parties hereto, a hearing shall be convened as soon as practicable, and the arbitrator shall submit his award within twenty (20) days after the close of the hearing. . . .

(Gordon Aff., Ex. A.)

Pursuant to the terms of the Agreement, the Funds conducted a routine audit of Unique's books and records "[i]n or around 2006." (Gordon Aff. ¶ 6.) On January 19, 2007, the Funds sent Unique a letter claiming a delinquency of $80,775.88 in fringe benefit contributions for the period May 22, 2005 through June 30, 2006 as a result of the audit. (*Id*., Ex. B.) The letter indicated that if Unique failed to pay within fourteen days, the Funds may commence an arbitration proceeding. (*Id*.) Unique, by letter of February 8, 2007, requested that the Funds re-evaluate the delinquency and confirm that Unique is not delinquent in benefits for work performed by non-union members and in Mount Vernon. (*Id*., Ex. D.) The Funds then sent a Notice of Intention to Arbitrate, dated February 12, 2007. (*Id*., Ex. E.) Unique contends that it cannot be compelled to arbitrate the claim for fringe

benefits because the work involved is not within the scope of the Agreement. Unique asserts that the work was not "covered work" within the meaning of the CBA (twelve of the fourteen workers concerned in the audit are non-union members and they were not employed as "carpenter installer[s] of furniture") and the work was performed outside the geographical jurisdiction in the CBA (the work performed was conducted in Unique's Mount Vernon facility, not New York City or Long Island). (Pet'r Mem. Supp. Order to Show Cause Staying Arbitration at 4.)

After receiving notice of the Funds' and Trustees' intention to arbitrate, Unique commenced this action in the Supreme Court for the State of New York to stay arbitration. Respondents removed the action to this Court on March 6, 2007 on the basis of federal question jurisdiction.[1] The state court judge, not wanting the matter to become moot, asked for respondents' reassurance that no arbitration would be scheduled until after the petition was decided. Respondents, however, scheduled arbitration for April 11, 2007. On March 30, 2007, we granted petitioner's request to temporarily restrain respondents from proceeding with any arbitration. We now consider petitioner's motion to permanently enjoin the arbitration and respondents' motion to compel arbitration.

**DISCUSSION**

The principles governing arbitration arising from collective bargaining agreements were established by the Supreme Court in the *Steelworkers* trilogy. The first principle set forth by the trilogy is a presumption of arbitrability of disputes arising out of collective bargaining agreements. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)

---

[1] We have jurisdiction to hear this case under 29 U.S.C. § 185. Both parties agree. We make no comment on respondents' removal to this court based on federal question jurisdiction under ERISA.

4

("An order to arbitrate the particular grievance should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). However, the Court also made it clear that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, (1986) (quoting *Warrior & Gulf*, 363 U.S. at 582); *Truck Drivers Local Union No. 807, I.B.T. v. Reg'l Imp. & Exp. Trucking Co.*, 944 F.2d 1037, 1042 (2d Cir. 1991) ("[A] duty to arbitrate a particular grievance can stem only from a contractual agreement to arbitrate, and a determination of the scope of such a contractual term is peculiarly within the purview of the judiciary.").

Because arbitration is governed by contract, "the question of arbitrability--whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance--is undeniably an issue for judicial determination." *AT & T Techs.*, 475 U.S. at 649; *Local Union No. 38, Sheet Metal Workers' Int'l Assoc., AFL-CIO v. A & M Heating, Air Conditioning, Ventilation & Sheet Metal, Inc.*, 314 F. Supp. 2d 332, 344 (S.D.N.Y. 2004) (Conner, J.) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002)) (deciding that whether defendant employer was the alter ego of the contracting employer, and therefore bound by the arbitration clause in the CBA, was "exactly the type of 'gateway' issue that is a 'question of arbitrability' for this Court"). Unless an agreement clearly evidences a contrary intent, the court, and not the arbitrator, determines whether the parties agreed to arbitrate the particular dispute. *Warrior & Gulf*, 363 U.S. at 582-83; *Am. Broad. Cos., Inc. v. Am. Fed'n of Television & Radio Artists*, 412 F. Supp. 1077, 1082 (S.D.N.Y. 1976). The Supreme Court cautioned, however, that in order "to be consistent with congressional policy in

favor of settlement of disputes by the parties through the machinery of arbitration," the court's role "must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance," and doubts should be resolved in favor of arbitration. *Warrior & Gulf*, 363 U.S. at 582-83. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id*.

Therefore, in deciding whether the parties are bound to arbitrate the particular dispute, the first step is to determine whether there is a valid contract to arbitrate between them. If there is, the court must examine the scope of the arbitration clause to determine if it is broad or narrow. *See Concourse Vill., Inc. v. Local 32E, Serv. Employees Int'l Union, ALF-CIO*, 822 F.2d 302, 304 (2d Cir. 1987); *Atlas Tile & Marble Works, Inc. v. Hart*, 1990 WL 180547, at *3 (S.D.N.Y. Nov. 14, 1990) (citing *Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93, 97 (2d Cir. 1986)). Considering the scope of the clause, the court then decides whether the particular grievance falls within it. If the grievance is covered by the contract, the role of the court ends and the matter is one for arbitration; the court may not rule on the merit of the claims even if it thinks they are frivolous. *See Emery Air*, 786 F.2d at 98-99 (noting that the Supreme Court and the Second Circuit have required arbitration of even frivoulous or barely colorable claims as long as they are not "so outlandish or devoid of reference to the collective bargaining agreement that even this low threshhold will not be satisfied"); *see also Concourse Vill.*, 822 F.2d at 305; *Atlas Tile*, 1990 WL 180547, at *3.

When a party asserts that a particular claim falls outside the scope of an arbitration clause, arbitration should not be denied unless the arbitration clause is positively not susceptible of an

interpretation that covers the dispute. *Rochdale Vill., Inc v. Pub. Serv. Employees Union, Local No. 80*, 605 F.2d 1290, 1295 (2d Cir. 1979). But the Court is aware that "[t]he object of an arbitration clause is to implement a contract, not to transcend it." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205-06 (1991) (finding that postexpiration grievances arise under the contract only where the occurrence arose before expiration or the contractual right survives expiration of the agreement, because after expiration the parties are released from contractual obligations).

There is no dispute that the parties here are signatories to the Agreement. Rather, petitioner argues that respondents' claim for fringe benefits is outside the scope of the Agreement because: the work in question was not performed within the jurisdictional limits of the contract; most of the workers were non-union members; and the work was not of the type covered by the contract. Petitioner provides numerous affidavits in support of these arguments. Mindful that we are confined to a determination of whether the parties entered an agreement to arbitrate and whether the alleged grievance falls within the scope of that agreement, we find petitioner's arguments that respondents' grievance falls outside the scope of the Agreement are misplaced. Petitioner is examining the scope of the entire contract. We must first analyze the scope of the arbitration agreement, and therefore must consider the plain language of that clause.

Petitioner states that "[w]hile the Agreement does contain an agreement to arbitrate matters within the scope of the Agreement, that clause does not provide an all-purpose arbitration mechanism for any matter outside the scope that the Union wishes to raise." (Pet'r Mem. Supp. Order to Show Cause Staying Arbitration at 3.) Looking at Article XII, the language of the clause states that "[a]ll complaints, disputes and differences concerning the application, interpretation, effect, purpose or breach of any term or condition of this Agreement, or in the event there shall exist

*any claim, demand, dispute or controversy between the parties hereto*, . . . not resolved shall be submitted to arbitration . . . . It is the intent of the parties hereto that *all disputes between them, both within and outside of the Agreement, shall be submitted to arbitration* . . . ." (Gordon Aff., Ex. A) (emphasis added). We can think of no broader scope and no plainer language to portray the parties' intent to arbitrate *any* dispute between them. *See Assoc. Brick Mason Contractors of Greater N.Y., Inc. v. Harrington*, 820 F.2d 31, 35-36 (2d Cir. 1987) ("Section 1 of Article VIII, by its express terms, covers disputes involving not only 'interpretation or application of any clause' of the Agreement but also 'any acts, conduct or relations between the parties . . . directly or indirectly, claiming to be aggrieved.' The language of this arbitration clause could hardly be broader, and [plaintiff's] grievances regarding a manpower shortage appear on their face to fall within its reach."); *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 887 (2d Cir. 1982) ("The arbitration clause quoted above is a broad one . . . . It encompassed 'all' questions of 'interpretation or application of any clause' of the agreement 'or any acts, conduct or relations' between the parties, 'directly or indirectly.' In light of this language, [] 'all questions, including those regarding termination, will be properly consigned to the arbitrator . . . .' ") (quoting *Rochdale Vill.*, 605 F.2d at 1295).

Petitioner further asserts that because they did not agree to an all-purpose arbitration clause, and because the underlying grievance involves work that was performed outside the scope of the contract, the parties are not required to arbitrate this claim for fringe benefits. However, we find that the language of the clause covers all disputes between the parties, whether under the Agreement or not, and therefore, for purposes of determining arbitrability, it matters not that the disputed fringe benefits relate to work petitioner claims was performed outside the scope of the contract. Petitioner agreed to arbitrate all disputes between the parties and points to no valid reason why the Court

8

should not uphold the plain language of the contract or find an exception related to this grievance.

In *International Union Operating Engineers, Local 150, AFL-CIO v. Flair Builders, Inc.*, the arbitration clause at issue contained similar language, requiring arbitration of "any difference" among the parties. 406 U.S. 487, 491 (1972). The Supreme Court found that "[t]here [was] nothing to limit the sweep of this language or to except any dispute or class of disputes from arbitration." *Id*. Therefore, it concluded "that the parties meant what they said-that 'any difference,' which would include the issue of laches raised by respondent at trial, should be referred to the arbitrator for decision." *Id*.; *see also Emery Air*, 786 F.2d at 98 (reiterating that exclusion of a grievance from a broad clause which applies to any dispute that should arise between the parties requires "compelling proof" of an intent to exclude, using language that is "unmistakably clear"); *Carpet Et Cetera, Inc. v. Forde*, 2006 WL 2959063, at *4 (S.D.N.Y. Oct. 16, 2006) (pursuant to the broadly worded grievance arbitration clause, requiring arbitration for any dispute between the parties, the issue of whether a party repudiated the agreement was itself subject to the arbitration clause); *Alphonse Hotel Corp. v. N.Y. Hotel & Motel Trades Council, AFL-CIO*, 2004 WL 414836, at *5 (S.D.N.Y Mar. 5, 2004) (finding that clause requiring arbitration for "any acts conduct [sic] or relations between the parties, directly or indirectly" clearly applied to disputes other than those covered by the CBA's terms and therefore included plaintiffs' claim for rescission and intentional infliction of emotional distress); *Charmers Indus., Inc., v. Liquor Salesmen's Union Local No. 2 of State of New York, AFL-CIO*, 415 F. Supp. 781, 784-86 (S.D.N.Y. 1976) (determining that arbitration clause reading: "in the event of any dispute, difference, disagreement, grievance or controversy of any nature or character shall arise between the Employer and Union, the parties agree that . . . such dispute shall be submitted to arbitration" required parties to arbitrate whether defendant repudiated contract and

9

whether agreement lacked mutuality).

Petitioner relies on *Rochdale Village* to support its argument that the arbitration clause is not all-encompassing and it is the duty of the court to "inquire into certain facts surrounding the case in order to determine whether arbitration is proper." (Pet'r Reply Mem. Supp. Order to Show Cause Staying Arbitration at 5.) First, we note that the contract language in *Rochdale Village* differs significantly from the language at issue in the present Agreement. In *Rochdale Village*, the parties agreed to arbitrate "any and all disputes hereunder." 605 F.2d at 1296-97. The court determined that the clause was broad but not unlimited, and therefore did not apply to collateral agreements. *Id*. Thus, questions whether the parties had a side agreement and the terms of such an agreement did not arise under the agreement and the issue was therefore beyond the scope of the arbitration clause. *Id*. There is no restrictive language in the present Agreement, such as "hereunder" or "under" or "pursuant to." Therefore the arbitration agreement is not limited to the terms of the Agreement, but rather extends to any dispute between the parties, as the plain language indicates. Second, we need not inquire into surrounding facts when the plain language of the contract is clear and unambiguous and petitioner provides no reason why it should not be held to that obligation. *See Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) ("In New York, if 'a contract is straightforward and unambiguous, its interpretation presents a question of law for the court to be made without resort to extrinsic evidence.' ") (citation omitted).

In *Interstate Brands Corporation v. Bakery Drivers & Bakery Goods Vending Machines, Local Union No. 550, International Brotherhood of Teamsters*, the court noted that a clause requiring arbitration of "any act or conduct or relation between the parties hereto" was "unusually broad" and "reasonably read to reach matters that go beyond the application and interpretation of the

Agreement." 167 F.3d 764, 767-68 (2d Cir. 1999). The court also noted that the result was compelled by contract construction because the parties agreed to arbitrate any dispute involving questions under the Agreement as well as any conduct or relation between the parties. *Id*. " '[A]ny act or conduct or relation between the parties' must necessarily mean something other than 'questions of interpretation or application of any clause or matter covered by [the] Agreement,' for to hold otherwise would render this language mere surplusage." *Id*. Petitioner would have this Court do exactly what the court in *Interstate Brands* refused to, render the language agreeing to arbitrate any dispute between the parties mere surplusage to the preceeding language establishing an agreement to arbitrate questions of interpretation and claims under the Agreement. Precedent and basic contract law convince us otherwise. *See LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) ("[A]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.") (citation and internal quotation marks omitted).

This is a dispute between the parties about fringe benefits. As respondents point out, in Article XV, Section 7 the parties agree to arbitrate "any dispute or disagreement [] between the parties hereto, . . . concerning any claim arising from payments to the Fund . . . ." (Gordon Aff., Ex. A.) Once again the plain language of this clause requires that the parties arbitrate any payment claim. Although petitioner would have us believe that they "never agreed to arbitrate any matter with the Funds that does not fall within the precise terms of the Agreement"and "[t]he only matters Unique has agreed to arbitrate with the Union or the Funds [] are those within the jurisdictional scope of the collective bargaining agreement" (Pet'r Mem. Supp. Order to Show Cause Staying Arbitration at 4, 6.), petitioner offers no reason why this Court should not hold it to the plain

meaning of the language in the contract it freely signed.

Not only is the arbitration clause very broad, but there is no exception for this particular grievance. The Agreement unambiguously reflects the parties' intent to arbitrate all disputes arising under the Agreement, and there is no exception in the clause for disputes over fringe benefits. The only exception is for jurisdictional disputes, and that does not apply here. Petitioner argues in its Reply Memorandum that this is a jurisdictional dispute between geographical locations. (Pet'r Reply Mem. Supp. Order to Show Cause Staying Arbitration at 5-6.)[2] We need not address this argument because the underlying claim has nothing to do with supposed competing districts of the Union, nor does it have to do with geographical jurisdiction if it can be said that the exception to arbitration would include geographical jurisdictional disputes at all.

Finally, in the event we denied the motion for a permanent stay, petitioner seeks an order that arbitration not be scheduled to take place for at least sixty days to allow for necessary discovery. Whether arbitration should be stayed for sixty days so that petitioner has time to conduct discovery is also an issue for the arbitrator, and this Court does not rule on petitioner's request. It is long settled that procedural matters of arbitration are to be determined by the arbitrator. *See Howsam*, 537 U.S. at 84 ("Thus procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator . . . . [I]ssues of procedural

---

[2] Without factual support, petitioner uses a hypothetical Westchester branch of the Union to illustrate its geographical location dispute exception. Petitioner alleges, that if it had an agreement with this Westchester District, the New York District of the Union could not contend that it had jurisdiction over work performed in Westchester because that would fall within the jurisdiction of an agreement with the Westchester District. Petitioner reasons it must also be true that in the absence of an agreement with this hypothetical Westchester District, the New York District can not assert that its agreement should "bleed over" into territory that would be governed by the Westchester District.

arbitrability, i.e., whether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.") (citations and internal quotation marks omitted; emphasis in original).

## CONCLUSION

For all the foregoing reasons, the Court concludes that this dispute over fringe benefits asserted by respondents is subject to arbitration. Accordingly, the temporary stay of arbitration issued on March 30, 2007 is hereby lifted, respondents' motion to compel arbitration is granted and petitioner's motion to permanently enjoin this arbitration is denied.

SO ORDERED.

Dated: White Plains, New York
       November 30, 2007

                                              *William C. Conner*
                                          Sr. United States District Judge

13